WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Stephen Karotkin
Frank Grese
Erika del Nido
Marvin Mills

*Attorneys for Helen Biggett*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re**<br><br>**CALVIN JACKSON,**<br><br>         **Debtor.** | **Chapter 7**<br><br>**Case No. 12-13722 (BRL)** |
| **HELEN BIGGETT,**<br><br>              **Plaintiff,**<br><br>**v.**<br><br>**CALVIN JACKSON,**<br><br>           **DEFENDANT.** | **Adv. Proc. 13-_____** |

**COMPLAINT OF HELEN BIGGETT OBJECTING TO DISCHARGE**
**OF DEBTOR PURSUANT TO SECTIONS 727(a)(2)(A), 727(a)(2)(B), 727(a)(3),**
**727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 727(a)(6)(A) OF THE BANKRUPTCY CODE**

TO THE HONORABLE BURTON R. LIFLAND
UNITED STATES BANKRUPTCY JUDGE:

Helen Biggett ("Ms. Biggett" or "Plaintiff"), a creditor in the above-captioned

chapter 7 case (the "Chapter 7 Case"), as and for her complaint against defendant Calvin Jackson

(the "Debtor"), hereby alleges as follows:

1

## NATURE OF ADVERSARY PROCEEDING

1.      Plaintiff, pursuant to sections 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(A), 727(a)(4)(D), 727(a)(5), and 727(a)(6)(A) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), objects to the Debtor receiving a discharge under section 727(a) of the Bankruptcy Code.

2.      This complaint is timely pursuant to the *Order Granting Motion of Helen Biggett for Contempt Sanctions and Related Relief* [ECF No. 85], which extended Ms. Biggett's time to object to the discharge of the Debtor and/or move to dismiss the Debtor's case, including under Bankruptcy Code section 707(b), for a period through and including January 31, 2014.

## JURISDICTION AND VENUE

3.      The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334.

4.      This adversary proceeding is a core proceeding as defined under 28 U.S.C. §§ 157(b)(2)(I) and 157(b)(2)(J).

5.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1409(a).

## THE PARTIES

6.      In 2009, Ms. Biggett, an elderly woman living in Queens, New York, obtained a judgment against the Debtor for breach of contract arising from the Debtor's failure to complete construction work for which Ms. Biggett had paid Debtor approximately $305,000.00. Despite Ms. Biggett's repeated attempts to recover the amounts owed by the Debtor, the Debtor has ignored both Ms. Biggett and the judgment entered against him.

2

7.      On August 30, 2012 (the "Petition Date"), to avoid paying the judgment and his other obligations, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

## FACTUAL ALLEGATIONS APPLICABLE TO CLAIMS FOR RELIEF

**A.      Judgment Against Debtor for Breach of Contract**

8.      Prior to the Petition Date, the Debtor operated various business ventures, including, among others, Dune Rite Cleaning Contractors ("Dune Rite").

9.      In 2006, the Debtor, Dune Rite, and Ms. Biggett entered into an agreement whereby the Debtor and Dune Rite agreed to complete various construction work for Ms. Biggett on her home.

10.     Ms. Biggett paid the Debtor and Dune Rite approximately $305,000.00.

11.     The Debtor and Dune Rite thereafter commenced the construction work, using inferior, unsuitable and defective material, and performing such work in a careless, negligent, and un-workmanlike manner.

12.     The Debtor and Dune Rite failed to complete the construction work.

13.     Ms. Biggett repeatedly informed the Debtor and Dune Rite that the construction work was incomplete, but the Debtor and Dune Rite ceased all work, refused to respond to Ms. Biggett's repeated requests for them to contact her, and never returned any portion of the $305,000.00 payment from Ms. Biggett.

14.     As a result of the Debtor and Dune Rite's failure to properly complete the construction work, Ms. Biggett was forced to hire and pay other contractors to finish some of the

3

work that the Debtor and Dune Rite were supposed to complete so that her home would be habitable.

15.     On September 13, 2007, Ms. Biggett filed a lawsuit against the Debtor in the Supreme Court of the State of New York, County of Queens (the "State Court"), alleging breach of contract, breach of warranty, and negligence.

16.     On March 12, 2009, the State Court awarded Ms. Biggett a default judgment (the "Judgment") in the amount of $133,040.00 plus interest from May 31, 2007.

17.     On March 4, 2011, the Judgment was revised to reflect interest in the amount of $45,040.11, for a total judgment in the amount of $178,080.41.

**B.      Debtor's Failure to Comply with State Court Subpoena**

18.     In late 2011, after months of struggling to gather from the Debtor information necessary for enforcement of the Judgment, Ms. Biggett instructed her counsel from the Legal Aid Society to petition the State Court to order the issuance of an information subpoena to the Debtor.

19.     On February 3, 2012, the State Court ordered the issuance of an information subpoena (the "Subpoena"), which Ms. Biggett caused to be served on the Debtor and his counsel.

20.     Following the Debtor's repeated failure to adequately respond to the Subpoena, on June 20, 2012, the State Court issued an *Order to Show Cause to Punish for Contempt of Court* based on the Debtor's noncompliance with the Subpoena.

US_ACTIVE:\44338776\8\99995.4531

**C.    Debtor's Material Omissions and Misrepresentations in the SOFA and Schedules and at the 341 Meeting**

**i. Debtor's Representations on SOFAs, Schedules, and at 341 Meeting**

21.    On the Petition Date, the Debtor filed a petition requesting relief under chapter 7 of the Bankruptcy Code [ECF No. 1] (the "Chapter 7 Petition") seeking to discharge the Judgment and certain other obligations.

22.    The Debtor attached to the Chapter 7 Petition a Statement of Financial Affairs (the "Original SOFA"), on which the Debtor listed "income from work" in the amount of $94,000.00 for 2011, and $64,000.00 for 2010.

23.    In the Original SOFA, the Debtor declared under penalty of perjury that for each of the following questions the applicable answer was "None":

| ITEM | QUESTION |
|------|----------|
| 3(c) | **Payments to creditors.**  List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. |
| 7 | **Gifts.**  List all gifts or charitable contributions made within one year immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. |
| 10(a) | **Other transfers.**  List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. |
| 11 | **Closed financial accounts.**  List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. |

5

| ITEM | QUESTION |
|------|----------|
| 15 | **Prior address of debtor.**  If debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse. |

*See* Original SOFA [ECF No. 1].

24.    With respect to item 18 of the SOFA (set forth below), the Debtor

disclosed "Dune-Rite" and "CJ Consultants" as his only businesses:

> **Nature, location and name of business.**  a. *If the debtor is an individual*, list the names, addresses, taxpayer-identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

25.    The Debtor also attached certain schedules of assets and liabilities to the

Chapter 7 Petition, including that certain Schedule B – Personal Property (the "Original Schedule

B"), which required the Debtor to (a) list "all personal property of the debtor of whatever kind,"

and (b) "state the name and address of any person holding property for the Debtor."

26.    The Debtor listed the following property on the Original Schedule B:

$10.00 of cash in pocket, one bed and one television worth $500.00, used clothing worth

$500.00, and three automobiles, including a Mercedes Benz that the Debtor purchased in late

2011, within one year of the Petition Date, and valued on his Schedule B at $35,190.00.[1]

27.    The Debtor declared that he possessed "none" of the following types of

property:

---

[1] The Debtor lowered the value of this vehicle to $33,299.00 on his Amended Schedule B.

US_ACTIVE:\44338776\8\99995.4531

| ITEM | PROPERTY TYPE |
|------|---------------|
| 2 | Checking, savings or other financial accounts, certificates of deposit or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. |
| 13 | Stock and interests in incorporated and unincorporated businesses. |
| 16 | Accounts receivable. |
| 28 | Office equipment, furnishings, and supplies. |
| 29 | Machinery, fixtures, equipment, and supplies used in business. |
| 30 | Inventory. |
| 35 | Other personal property of any kind not already listed.  Itemize. |

28.     The Debtor did not list any person as holding property for the Debtor on his Original Schedule B.

29.     On September 26, 2012, the Debtor filed (a) that certain Amended Schedule B [ECF No. 7] ("Amended Schedule B," and together with the Original Schedule B, the "Schedules"), which (i) listed, in addition to the property described in paragraph 26 a "Chase Checking Account" with a balance of $48.73, and (ii) also did not list any person as holding property for the Debtor, and (b) an amended Statement of Financial Affairs [ECF No. 8] (the "Amended SOFA," and together with the Original SOFA, the "SOFA"), which contained the same representations described in paragraphs 9-11 herein.

30.     At the 341 meeting, held on October 3, 2012 (the "October 341 Meeting"),[2] the Debtor testified that he did not pay any friends or relatives within the past year. Audio tape: October 341 Meeting (Oct. 3, 2012) (the "Audio Tape") at 1:39.  At the same

_____

[2] An audio recording is available for this meeting, but no official transcript has been created.

hearing, when questioned regarding "Dune Rite," one of the Debtor's businesses, the Debtor

testified that Dune Rite was a cleaning company, and after being explicitly questioned by the

chapter 7 trustee for the Debtor's estate (the "Trustee"), he testified that he did not do any

construction work.  Audio Tape at 16:34.

31.    At the continuation of the October 341 meeting, on December 6, 2012 (the

"December 341 Meeting"),[3] the Debtor testified that "I didn't have no employees."  December

341 Meeting Tr. 21:2, (Dec. 6, 2012).  The Debtor also testified that during 2011 and 2012, he

traveled to Miami, Las Vegas, and the Dominican Republic on vacation.  *Id.* at 21:23-25.

Additionally, he explained a 2012 debit card purchase for $1,300 at luxury designer Salvatore

Ferragamo as follows:  "My son, he was taking his girl to a Sweet 16 party and him and my

daughter . . . they used the debit card . . ." *Id.* at 25:10-13.  Furthermore, he testified that he did

not keep any business records other than a few pages of handwritten notes that he provided to the

Trustee. *Id.* at 19:23-21:2.

### ii.  Material Omissions and Misstatements

32.    Upon information and belief, contrary to the representations made under

oath by the Debtor in the SOFA and Schedules and at the October 341 Meeting, between

September 2011 and August 2012, within the year immediately preceding the commencement of

the Chapter 7 Case, the Debtor transferred or caused to be transferred through an intermediary

certain assets in the form of cash payments to Tianna Jackson Baez, the Debtor's daughter (who

was at that time employed as a bankruptcy lawyer), in an aggregate amount of no less than

$90,000.

---

[3] The 341 meeting has not yet concluded and has been continued multiple times, upon information and belief, due to
the Debtor's failure to adequately comply with disclosure requests.

US_ACTIVE:\44338776\8\99995.4531

33.     The Debtor willfully failed to disclose any gifts or transfers to Ms. Baez in the SOFA and, as of the date hereof, has not provided any information concerning such gifts and/or transfers.  At the October 341 Meeting, the Debtor testified that he did not make any transfers to insiders.  Audio Tape at 1:39.

34.     Additionally, the Debtor did not disclose on his SOFA that he effectively transferred at least $1,300 to his son in 2012 by permitting his son to use his debit card to purchase luxury goods; however, when questioned by the Trustee about certain luxury purchases at the December 341 Meeting, the Debtor admitted that he allowed his son to use his debit card to purchase at least $1,300 worth of luxury goods.

35.     Upon information and belief, prior to the Petition Date, the Debtor requested that Orlando A. Tomlinson, a business associate of the Debtor, open two bank accounts in Mr. Tomlinson's name (collectively, the "Unreported Bank Accounts"), which the Debtor used for personal expenses:

| Bank | Account Number Ending in | Account Holder | Account Status |
|---|---|---|---|
| Chase | 1688 | Orlando A. Tomlinson or Calvin Jackson | Account remained open as of Petition Date |
| Chase | 6602 | Orlando A. Tomlinson DBA United Restoration & Development (Upon information and belief, Debtor possessed a bank card in connection with this account.) | Account remained open as of February 29, 2012 (and may have remained open as of the Petition Date)[4] |

---

[4] Due to the Debtor's failure to comply with the Discovery Orders (as defined below), whether certain accounts remained open through the Petition Date cannot be determined.  Regardless, even if certain of the accounts were closed prepetition, such closures were not disclosed on the SOFA as required

9

36.    Based upon information provided by Mr. Tomlinson, at least one of the Unreported Bank Accounts does not bear the Debtor's name.

37.    With respect to at least one of the Unreported Bank Accounts, upon information and belief, Mr. Tomlinson deposited no money into such Unreported Bank Account.

38.    Upon information and belief, on or around the Petition Date, the Debtor utilized the Unreported Bank Accounts to purchase certain consumer goods and services including, among other things, luxury goods and airline tickets.

39.    The Debtor has willfully omitted the Unreported Bank Accounts from the Schedules and SOFA and, as of the date hereof, has not provided any information concerning any transactions involving such accounts.

40.    Upon information and belief, the Debtor possessed at least two additional accounts with JPMorgan Chase Bank, N.A.  At least one of these accounts remained open within a year of the Petition Date.

41.    Upon information and belief, the Debtor operated or was associated with various unincorporated businesses including CJ Consultants, Dune Rite, Gilgal Associates, Inc., CK Beauty Supply, CG Beauty Supply Inc, LP Beauty Supply, Tremont Business and Community Organization, and United Restoration & Development.  Other than CJ Consultants and Dune Rite, however, the Debtor failed to disclose any further business interests on his Schedules or SOFA.  Additionally, the Debtor testified at the October 341 Meeting that Dune Rite did not engage in construction work because it was merely a cleaning company.  However, Ms. Biggett entered into a contract with the Debtor and Dune Rite for construction work and obtained the Judgment in connection therewith.

US_ACTIVE:\44338776\8\99995.4531

42.    On Schedule C, Part II, of the Debtor's 2010 tax return, the Debtor itemized the following expenses:

| Expense | Amount |
|---|---|
| Advertising | $300 |
| Car and truck expenses | $6,600 |
| Contract labor | $10,000 |
| Office expense | $1,500 |
| Travel | $10,000 |
| Deductible meals and entertainment | $150 |
| Utilities | $2,400 |
| Wages | $15,000 |
| Other Expenses | $9,000 |
| **TOTAL** | **$39,950** |

43.    On Schedule C, Part V, of the Debtor's 2010 tax return, the Debtor stated that he spent $6,000 on clothing (suits and shoes) and $3,000 on dry cleaning during 2010.

44.    The Debtor's 2011 tax return lists the Debtor's occupation as "consultant" and provides the Debtor's email address as "DUNERITE2@YAHOO.COM," which corresponds to one of the Debtor's numerous businesses.

45.    On Schedule C, Part II, of the Debtor's 2011 tax return, the Debtor itemized the following expenses:

| Expense | Amount |
|---|---|
| Advertising | $500 |
| Car and truck expenses | $13,010 |

11

| Expense | Amount |
|---|---|
| Office expense | $7,500 |
| Repairs and maintenance | $2,500 |
| Supplies | $2,500 |
| Travel | $6,000 |
| Deductible meals and entertainment | $1,250 |
| Utilities | $1,250 |
| Wages | $15,000 |
| Other Expenses | $6,800 |
| **TOTAL** | **$56,310** |

46.     On Schedule C, Part III, of the Debtor's 2011 tax return, the Debtor stated that he possessed $20,000 of inventory at the beginning of 2011 and possessed $1,000 of inventory at the end of such year.

47.     On Schedule C, Part V, of the Debtor's 2011 tax return, the Debtor stated that he spent $5,000 on clothing (suits and shoes) and $1,800 on dry cleaning during 2011.

48.     Based upon the Debtor's 2010 and 2011 tax returns, the Debtor possessed an interest in inventory, equipment, supplies, and at least $11,000 worth of "suits and shoes" related to his businesses  However, the Debtor asserts in his Schedules that he has no interest in any business, accounts receivable, equipment, supplies, inventory, or that he only has "used clothing" worth $500.00.  In addition, the SOFA asserts that the Debtor did not gift or transfer any such assets.

49.     Moreover, based on the business expense deductions taken by the Debtor in his 2010 and 2011 tax returns, it is inconceivable that the Debtor neither kept, nor possesses,

12

any books, documents, records or papers related to his business transactions, which contradicts

sworn testimony at the October 341 Meeting where the Debtor explained that the only records

related to his businesses were a few pages of handwritten notes allegedly prepared in 2011.

Audio Tape at 11:55.  Additionally, the Debtor's statement that he only had several pages of

handwritten notes directly contradicts Debtor's subsequent statement, in which he testified that

"I used my sister's computer" in connection with his businesses.  Audio Tape at 12:19.  In

addition, the Debtor documented his transaction with Ms. Biggett in writing on a computer-

generated company letterhead and maintained a business email address, which indicate that the

Debtor kept and possesses books, documents, records or papers related to his business

transactions.

50.     Upon information and belief, the Debtor has resided at multiple addresses

within three years prior to the Petition Date.  The Debtor has failed to disclose his previous

addresses as required by the SOFA.

**D.     Debtor's Blatant Disregard for, and Failure to Comply with the Discovery Orders**

51.     On January 28, 2013, Ms. Biggett filed the *Motion of Helen Biggett,*

*Pursuant to Bankruptcy Rule 2004, to Direct the Examination of Witnesses and for the*

*Production of Documents* [ECF No. 33] (the "Biggett Discovery Motion"), pursuant to

Bankruptcy Rule 2004, for authorization to direct the examination of certain witnesses and the

production of documents by the Debtors and certain other discovery parties.

52.     On February 11, 2013, the Bankruptcy Court entered an order granting the

Discovery Motion [ECF No. 46] (the "Biggett Discovery Order"), which required, among other

things, that the Debtor comply with the document request attached thereto by February 21, 2013.

The Debtor failed to comply with the Discovery Order.

13

53.     During the two-month period following the expiration of the discovery deadline established by the Discovery Order, counsel to Ms. Biggett made numerous, unanswered requests of the Debtor's counsel for production.

54.     On April 29, 2013, Ms. Biggett's counsel received a letter, dated April 26, 2013, which provided a very limited amount of responsive information, but failed to respond to the majority of the requests set forth in the Discovery Order.

55.     On April 30, 2013, counsel to Ms. Biggett sent a letter to Debtor's counsel requesting full and immediate compliance with the Discovery Order.

56.     On May 16, 2013, as a result of the Debtor's continued failure to comply with the Discovery Order, Ms. Biggett filed the *Motion of Helen Biggett to Compel Compliance with Order Granting Motion, Pursuant to Bankruptcy Rule 2004, to Direct the Examination of Witnesses and for the Production of Documents* [ECF No. 59] (the "Biggett Motion to Compel").

57.     On June 6, 2013, the Bankruptcy Court entered an order granting the Motion to Compel [ECF No. 66] (the "Biggett Order to Compel"), which required the Debtor to comply with the Discovery Order by June 17, 2013.

58.     The Debtor failed to comply with the Biggett Order to Compel, and failed to provide any communication or documentation to Ms. Biggett's counsel prior to the deadline set forth therein.

59.     On July 10, 2013, as a result of the Debtor's continued failure to comply with the Biggett Order to Compel, Ms. Biggett filed the *Motion of Helen Biggett for Contempt Sanctions and Related Relief* [ECF No. 73] (the "Biggett Contempt Motion"), pursuant to Bankruptcy Rule 9020 and section 105 of the Bankruptcy Code, requesting, among other things, that the Debtor be held in contempt of court and subject to certain monetary sanctions.

14

60.    On July 11, 2013, the Trustee filed the *Motion Pursuant to Bankruptcy Rule 2004, for Order Authorizing Trustee to Issue Subpoenas to Conduct Examinations of, and to Obtain Documents From, Certain Witnesses* [ECF No. 74] (the "Trustee Discovery Motion"), pursuant to which the Debtor was required to produce documents and appear at a deposition.

61.    On July 30, 2013, the Bankruptcy Court entered an order granting the Trustee's Discovery Motion [ECF No. 77] (the "Trustee Discovery Order"), which required the Debtor to comply with the Trustee Discovery Order by June 17, 2013.

62.    Pursuant to the Trustee Discovery Order, the Trustee issued a subpoena establishing (a) September 9, 2013 as the date by which the Debtor must return responsive documents to the Trustee, and (b) September 18, 2013 as the date on which the Debtor must appear at a deposition.

63.    Upon information and belief, the Debtor failed to produce any documents to the Trustee by September 9, 2013 and as of the date hereof, still has not.

64.    Upon information and belief, on or about the day before the scheduled deposition, the Debtor's counsel informed the Trustee that the Debtor would not attend the deposition on September 18, 2013.[5]

65.    On September 24, 2013, the Bankruptcy Court entered an order granting the Contempt Motion [ECF No. 85] (the "Biggett Contempt Order", and together with the Biggett Discovery Order, the Biggett Order to Compel, and the Trustee Discovery Order, the "Discovery Orders"), which (a) held the Debtor to be in contempt of Court, (b) provided that the Debtor might purge himself of the contempt by producing required documents by October 8,

---

[5] Upon information and belief, the Debtor's wife and sister also were subpoenaed and have yet to provide any documents or appear for their depositions.  Upon information and belief, the Trustee has been in contact with certain family members and is hopeful that such family members will cooperate with the Discovery Orders.

US_ACTIVE:\44338776\8\99995.4531

2013, and imposed a daily fine in the amount of $400 per day beginning on October 9, 2013 until

the Debtor fully complies with the Biggett Order to Compel, and (c) required the Debtor to

appear for examination on October 16, 2013.  At the September 24, 2013 hearing, counsel to the

Trustee appeared and informed the Bankruptcy Court on the record of the Debtor's non-

compliance with the Trustee's Discovery Order.  Based upon this statement, the Bankruptcy

Court ordered the Debtor to appear for examination on October 16, 2013 at 10:00 AM.

66.    Not even being in contempt of Court has incentivized the Debtor to

comply with the Discovery Orders and fulfill his obligations under the Bankruptcy Code, as the

Debtor failed to produce any documents to Ms. Biggett's counsel by the October 8, 2013

deadline, and as of the date hereof, still has not.

67.    The Debtor also failed to appear for examination by the Trustee on

October 16, 2013, in blatant violation of the Biggett Contempt Order.

68.    Upon information and belief, the Debtor has not made any payments on

account of the $400 daily fine that was triggered on October 9, 2013 due to the Debtor's failure

to comply with the Biggett Contempt Order.

## COUNT I

### (Denial of Discharge Pursuant to Section 727(a)(2)(A) of the Bankruptcy Code)

69.    Plaintiff repeats and alleges each and every allegation set forth in

paragraphs 1 through 56 of this complaint as if fully set forth herein.

70.    Section 727(a)(2)(A) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

> (2) the debtor, with intent to hinder, delay, or defraud a
> creditor or an officer of the estate charged with custody of
> property under this title, has transferred, removed,
> destroyed, mutilated, or concealed, or has permitted to be
> transferred, removed, destroyed, mutilated, or concealed—

16

(A) property of the debtor, within one year before
the date of the filing of the petition;

71.     Prior to the Petition Date, the Debtor, with the intent to hinder, delay or

defraud creditors, transferred, removed, destroyed, mutilated, or concealed, or has permitted to

be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one

year before the Petition Date.

72.     Within one year prior to the Petition Date, and with the intent to hinder,

delay or defraud creditors, the Debtor transferred approximately $90,000 to his bankruptcy

lawyer daughter, Ms. Baez, some of which Ms. Baez funneled back to the Debtor by way of

purchases of certain goods and services she made on the Debtor's behalf.  The Debtor did not

disclose these transfers on his SOFA.

73.     Within one year prior to the Petition Date, and with the intent to hinder,

delay or defraud creditors, the Debtor spent thousands of dollars on luxury goods (including

purchases at Louis Vuitton, Gucci, Nieman Marcus, Nordstrom, Armani Exchange, and

Victoria's Secret).  Instead of paying his creditors, including judgment creditor Ms. Biggett who

was actively pursuing the Debtor in State Court to recover on the Judgment, the Debtor, in an

attempt to conceal assets from his creditors, went on shopping sprees where he converted

portions of his cash to luxury goods and either kept such luxury goods and then concealed them

from his creditors (including by not disclosing such assets on his Schedules) or transferred them

to third parties (no transfers were disclosed on his SOFA) such as family or friends.  To conceal

these purchases and assets from his creditors, the Debtor used debit cards associated with the

Unreported Bank Accounts to make many of these purchases.

74.     Similarly, within one year prior to the Petition Date, and with the intent to

hinder, delay or defraud creditors, the Debtor spent thousands of dollars on expensive trips to

US_ACTIVE:\44338776\8\99995.4531

destinations such as Las Vegas, Miami, and the Dominican Republic and on entertainment. To
conceal these purchases and assets from his creditors, the Debtor used debit or credit cards
associated with the Unreported Bank Accounts for certain purchases related to certain of these
trips. In addition, significant ATM cash withdrawals were made from the Unreported Bank
Accounts during these trips.

75.     Within one year prior to the Petition Date, and with the intent to hinder,
delay or defraud creditors, the Debtor permitted his son to make at least $1,300 worth of luxury
purchases using the Debtor's assets.

76.     Additionally, within one year prior to the Petition Date, and with the intent
to hinder, delay or defraud creditors, the Debtor transferred certain of his property to the
Unreported Bank Accounts. The Debtor then concealed certain of his property in the Unreported
Bank Accounts, including a $600 deposit into one of the Unreported Bank Accounts one day
before the Petition Date. The Debtor has never disclosed this transfer or the existence of these
accounts.[6] Furthermore, upon information and belief, the Debtor possessed two additional bank
accounts, which he did not disclose.

77.     At the time of such transfers and actions referenced above, the Debtor
knew that, pursuant to the Judgment, he owed at least $178,080.41 to Ms. Biggett and, therefore,
knowingly transferred, removed, or concealed property as part of an effort to hinder, delay, or
defraud at least one of his creditors.

78.     As set forth in more detail above, upon information and belief, the Debtor
operated, was associated with, or had an interest in, various unincorporated businesses, yet no
such interests or business assets were disclosed on his Schedules.

---

[6] Ms. Biggett learned of these transfers from documentation obtained from third parties.

US_ACTIVE:\44338776\8\99995.4531

79.     As set forth in more detail above, the Debtor's 2010 and 2011 tax returns reveal that the Debtor possessed an interest in inventory, equipment, supplies, and at least $11,000 worth of "suits and shoes" related to his businesses and paid $30,000 of wages to employees.  However, the Debtor asserts in his Schedules that he has no interest in any business, accounts receivable, equipment, supplies, inventory and that he only has "used clothing" worth $500.  In addition, the SOFA asserts that the Debtor did not gift or transfer any such assets.  Therefore, it is evident that the Debtor had an interest in property such as equipment, supplies, inventory and thousands of dollars of clothes within a year prior to the Petition Date and has transferred, removed, destroyed, mutilated, or concealed such property, or permitted such actions to have occurred, within a year of the Petition Date with the intent to hinder, delay or defraud creditors.

80.     Furthermore, as detailed above, based on the Debtor's 2010 and 2011 tax returns, certain statements made at the October 341 Meeting, and transactions with Ms. Biggett, it is inconceivable that the Debtor neither kept, nor possesses, any additional books, documents, records or papers related to his business transactions.  Therefore, the Debtor must have transferred, removed, destroyed, mutilated, or concealed such books, documents, records or papers related to his businesses, or permitted such actions to have occurred, within a year of the Petition Date with the intent to hinder, delay or defraud creditors.

81.     By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a discharge in accordance with section 727(a)(2)(A) of the Bankruptcy Code.

## <u>COUNT II</u>

### (Denial of Discharge Pursuant to Section 727(a)(2)(B) of the Bankruptcy Code)

82.     Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 69 of this complaint as if fully set forth herein.

19

83.     Section 727(a)(2)(B) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> > (B) property of the estate, after the date of the filing of the petition;

84.     Since the Petition Date, the Debtor, with the intent to hinder, delay or defraud his creditors, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor.

85.     On or after the Petition Date, the Debtor has transferred, removed, and/or concealed certain of his property in the Unreported Bank Accounts, for which the Debtor has failed to disclose or make any accounting.  Specifically, the Debtor deposited over $4,600 into one of the Unreported Bank Accounts within four months of the Petition Date, which the Debtor has failed to disclose.  Upon information and belief, this transfer included property of the estate that was not disclosed on the Schedules or SOFA.

86.     Upon information and belief, merely one week after the Petition Date and the filing of the Schedules and SOFA in which the Debtor swore that, excluding his motor vehicle assets, he had assets worth only $1,010 (including only $10.00 cash on hand), on September 7, 2012, the Debtor transferred at least $5,000 in cash to his daughter, Ms. Baez.  The Debtor has concealed this transfer and failed to provide any information in connection therewith.  Upon information and belief, this transfer included property of the estate that was not disclosed on the Schedules or SOFA.

US_ACTIVE:\44338776\8\99995.4531

87.     By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a discharge in accordance with section 727(a)(2)(B) of the Bankruptcy Code.

## COUNT III

**(Denial of Discharge Pursuant to Section 727(a)(3) of the Bankruptcy Code)**

88.     Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 75 of this complaint as if fully set forth herein.

89.     Section 727(a)(3) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

90.     As set forth in detail above, without sufficient justification, the Debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the Debtor's financial condition or business transactions might be ascertained.

91.     As set forth above, the Debtor was engaged in multiple business transactions, which in the past had earned at least hundreds of thousands of dollars.  The Debtor was able to make specific, itemized deductions on his 2010 and 2011 tax returns related to his businesses.  The Debtor also paid employees[7] and housed inventory.  The Debtor used a computer-generated contract when entering into his business transaction with Ms. Biggett.  The Debtor maintained a business email address into 2012, which was used as the Debtor's contact

---

[7]  The Debtor itemized "wages" as a tax deduction, yet he testified at the December 341 Meeting that during the same period, he had no employees.  December 341 Meeting Tr. 21:2, (Dec. 6, 2012).

US_ACTIVE:\44338776\8\99995.4531

information in his 2011 tax return.  In order to operate his businesses, maintain and pay

employees, conduct his personal affairs and fulfill his obligations as a debtor under the

Bankruptcy Code, the Debtor had an obligation to keep, preserve and disclose books, documents,

records, and papers related to his finances, assets, and businesses, which he has either concealed,

destroyed, mutilated, falsified, or failed to keep or preserve.

92.    By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a

discharge in accordance with section 727(a)(3) of the Bankruptcy Code.

## COUNT IV

### (Denial of Discharge Pursuant to Section 727(a)(4)(A) of the Bankruptcy Code)

93.    Plaintiff repeats and alleges each and every allegation set forth in

paragraphs 1 through 80 of this complaint as if fully set forth herein.

94.    Section 727(a)(4)(A) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in
connection with the case—

(A) made a false oath or account;

95.    As detailed above, in connection with the Chapter 7 Case, the Debtor has

knowingly and fraudulently made a false oath and/or account by (i) not disclosing certain

property and property interests on his Schedules, including, (a) the Unreported Bank Accounts,

which were used to conceal certain property and tens of thousands of dollars of luxury good

purchases (which luxury goods were also omitted from the Schedules), lavish trips and

entertainment within one year prior to the Petition Date, and (b) assets related to his

unincorporated businesses that were disclosed on his 2010 and 2011 tax returns such as

inventory, equipment, supplies, and at least $11,000 worth of "suits and shoes"; and

22

(ii) misrepresenting on his SOFA that the Debtor did not make any gifts or transfers, including at least approximately $90,000 of gifts or transfers to his daughter, Ms. Baez, or the $1,300 transfer to his son, which his son used to purchase luxury goods.

96.     As set forth above, the Debtor produced a computer-generated contract with Ms. Biggett and itemized detailed deductions on his 2010 and 2011 tax returns.  Based upon this evidence, the Debtor must have kept books, documents, records, and papers and has knowingly and fraudulently made false statements that he never kept books and records or that they never existed.  Additionally, as detailed above, the Debtor itemized $30,000 of wage deductions in 2010 and 2011, yet he testified at the December 341 Meeting that he never had any employees.  The Debtor has knowingly and fraudulently made a false statement with respect to whether he had employees.

97.     At the October 341 Meeting, the Debtor testified that he did not pay any friends or relatives within one year of the Petition Date.  Audio Tape at 1:39.  Debtor made this false oath knowingly and fraudulently because the Debtor transferred at least $90,000 to his daughter, Ms. Baez, and transferred at least $1,300 to his son within one year of the Petition Date.

98.     The Debtor also testified at the October 341 Meeting that Dune Rite was a cleaning company and did not engage in any construction work, despite the fact that Ms. Biggett obtained the Judgment against the Debtor for construction work that the Debtor had contracted to complete.  Audio Tape at 16:34.  Therefore, the Debtor knowingly and fraudulently made this false oath.

99.     By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a discharge in accordance with section 727(a)(4)(A) of the Bankruptcy Code.

US_ACTIVE:\44338776\8\99995.4531

## COUNT V

### (Denial of Discharge Pursuant to Section 727(a)(4)(D) of the Bankruptcy Code)

100.    Plaintiff repeats and alleges each and every allegation set forth in paragraphs 1 through 87 of this complaint as if fully set forth herein.

101.    Section 727(a)(4)(D) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

102.    The Debtor has withheld from the Trustee and Ms. Biggett books, documents, records and papers relating to the Debtor's property and financial affairs.  In violation of the Discovery Orders, the Debtor has failed to provide, among other things, all bank account statements in the name of Calvin Jackson, or controlled by Calvin Jackson, or with respect to which Calvin Jackson had signing authority or access, for the period August 30, 2006 through and including August 30, 2012.  The Debtor has also refused to appear for two depositions, including the one mandated by this Court pursuant to the Biggett Contempt Order. By withholding and refusing to provide such information, the Debtor has knowingly and fraudulently attempted to prevent the Trustee and creditors, including Ms. Biggett, from determining the amount and location of any property that the Debtor either has in his possession or transferred prior to or during the Chapter 7 Case.  The Debtor is currently in contempt of court for failure to comply with the Discovery Orders.

24

103.     By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a

discharge in accordance with section 727(a)(4)(A) of the Bankruptcy Code.

## COUNT VI

**(Denial of Discharge Pursuant to Section 727(a)(5) of the Bankruptcy Code)**

104.     Plaintiff repeats and alleges each and every allegation set forth in

paragraphs 1 through 91 of this complaint as if fully set forth herein.

105.     Section 727(a)(5) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

> (5) the debtor has failed to explain satisfactorily, before
> determination of denial of discharge under this paragraph,
> any loss of assets or deficiency of assets to meet the
> debtor's liabilities;

106.     The Debtor has failed to explain satisfactorily the loss and/or deficiency of

assets to meet the Debtor's liabilities.  The SOFA provides that, during the two years

immediately prior to the commencement of the Chapter 7 Case, the Debtor received a substantial

income -- $64,000 in 2010 and $94,000 in 2011.  Moreover, the Debtor was paid over $300,000

by Ms. Biggett in connection with the construction work that the Debtor failed to complete,

which resulted in the Judgment.  Despite the Debtor's business ventures and numerous bank

accounts, the Schedules that the Debtor filed under oath with this Court assert that the Debtor has

the following non-motor vehicle assets:  (a) $10.00 in cash, (b) one bed and one television worth

$500.00, (c) used clothing worth $500.00, and (d) a bank account with a balance of $48.73.

The Debtor's 2010 and 2011 tax returns further reflect that the Debtor possesses or recently

possessed assets related to his businesses including equipment, supplies, inventory, and $11,000

worth of suits and shoes.  The Debtor has not explained the loss or whereabouts of such assets.

Moreover, by failing to comply with the Discovery Orders or purge himself of his contempt of

25

Court in accordance with the Biggett Contempt Order, the Debtor has failed to provide any

explanation, let alone a satisfactory explanation, regarding the disposition of such assets.

107.    In addition, as detailed above, the Debtor maintained the Unreported Bank

Accounts to conceal certain property and tens of thousands of dollars worth of luxury good

purchases, lavish trips and entertainment within one year prior to the Petition Date.  Furthermore,

also within one year prior to the Petition Date, the Debtor fraudulently transferred approximately

$90,000 to his daughter, Ms. Baez, and $1,300 worth of luxury goods to his son.  These events

explain the loss of certain of the Debtor's assets; however, they were knowingly concealed by

the Debtor and not disclosed on the Schedules or SOFA, and the Debtor has provided no

information or documentation regarding such events.  In any event, such fraudulent conduct does

not explain "satisfactorily" any loss of assets.

108.    By virtue of the foregoing, the Bankruptcy Court should deny the Debtor a

discharge in accordance with section 727(a)(5) of the Bankruptcy Code.

## COUNT VII

### (Denial of Discharge Pursuant to Section 727(a)(6)(A) of the Bankruptcy Code)

109.    Plaintiff repeats and alleges each and every allegation set forth in

paragraphs 1 through 96 of this complaint as if fully set forth herein.

110.    Section 727(a)(6)(A) of the Bankruptcy Code provides that:

(a) The court shall grant the debtor a discharge, unless—

(6) the debtor has refused, in the case—

(A) to obey any lawful order of the court, other than
an order to respond to a material question or to
testify;

111.    Notwithstanding that the Debtor voluntarily commenced the Chapter 7

Case, the Debtor has failed to fulfill his obligations as a debtor and has stonewalled Ms. Biggett,

this Court, and other parties in interest throughout the Chapter 7 Case by refusing to comply with

numerous Court orders demanding production of information on the Debtor's finances and

businesses.  The Debtor has refused to act in good faith in responding to any of the Discovery

Orders, and such refusal has (a) unnecessarily delayed and frustrated the bankruptcy process, (b)

caused Ms. Biggett and other parties in interest to needlessly incur legal costs, (c) drained the

bankruptcy estate of its limited assets, and (d) forced the Bankruptcy Court to defer time and

attention away from other matters.  The delays resulting from the Debtor's refusal to obey the

lawful orders of the Bankruptcy Court are the result of the Debtor's bad faith and malicious

attempt to exhaust the estate's assets and continue to conceal information concerning other assets

that may be available for distribution to creditors in the Chapter 7 Case.

112.    By virtue of the foregoing, the Bankruptcy Court should deny the Debtor

a discharge in accordance with section 727(a)(6)(A) of the Bankruptcy Code.

US_ACTIVE:\44338776\8\99995.4531

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests entry of an order (a) denying the

Debtor a discharge pursuant to sections 727(a)(2)(A), 727(a)(2)(B), 727(a)(3), 727(a)(4)(a),

727(a)(4)(D), 727(a)(5), and/or 727(a)(6)(A) of the Bankruptcy Code, and (b) granting such

other and further relief, including interest, costs, and attorneys' fees, as the Bankruptcy Court

deems just and proper.

Dated: November 19, 2013
New York, New York

/s/ Stephen Karotkin
Stephen Karotkin
Frank Grese
Erika del Nido
Marvin Mills

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Helen Biggett

US_ACTIVE:\44338776\8\99995.4531